1010.   COKER *et al.,* executors, *v.* OLIVER. .

1. Where an attorney at law has taken a claim for suit and collection on the terms that he is to have a certain percentage of the recovery for his services, and after judgment the client, without the consent of the attorney, takes from the debtor property in full settlement of the judgment, he becomes liable to the attorney for the full amount of the fee.
2. In a suit to recover the fee from the client, evidence as to the real value of the property taken in payment of the judgment is immaterial.
3. Communications to a person who is an attorney at law are not confidential and privileged from proof against the person making them, unless made to the attorney in his capacity as such. Mere casual personal conversations with the attorney are not privileged.
4. The evidence authorized the judgment rendered.

Complaint, from city court of Atlanta—Judge Reid. January 6, 1908.

Argued March 13,—Decided September 28, 1908.

*John L. Hopkins & Sons,* for plaintiffs in error.

*C. D. Hill, D. K. Johnston,* contra.

RUSSELL, J. In 1897 F. M. Coker employed Oliver, as an attorney, to bring suit in Alabama against one Reed, on two promissory notes. Oliver obtained judgment on the notes in 1897. Numerous letters passed between Oliver and Coker with reference to the claim; and, while Oliver did not collect anything upon the judgment it appears that this was perhaps due to the fact that

Reed had no property standing in his own name upon which a fi. fa. could be levied. In 1904 Coker purchased $15,000 in stock of a pecan corporation which Reed was promoting, and paid for it with the judgment Oliver had obtained against Reed, and $5,000 in cash. Oliver's petition in the present case alleged, that he sued the Reed notes to judgment and obtained judgment for $5,450 principal, and $893.80 interest to the date of judgment; that Coker agreed to pay him ten per cent. of the amount of the judgment, principal and interest, when collected, for his services, and that about July 29, 1904, Coker settled the judgment directly with the defendant for the full face amount. Coker died before the case was reached for trial, and his executors, the present plaintiffs in error, were made parties in his stead. The gist of the answer is that Coker did not make such settlement of the judgment as would entitle Oliver to any fee. It is averred not only that Coker never collected any money from Reed, but that he lost practically all of the $5,000 in cash that he put in the pecan-grove scheme. The defendant also pleaded the statute of limitations. Coker having died, and the plaintiff being therefore incompetent to testify as to his alleged contract of employment, one of the questions raised by the record is whether the court erred in permitting one B. H. Hill, an attorney at law, to testify in reference to certain statements alleged to have been made to him by Coker. The objection urged to Mr. Hill's testimony was that his information was derived from the relationship of attorney and client. The plaintiffs in error next insist that the court erred in excluding testimony tending to show that property or stock which Mr. Coker took in settlement of the judgment which Oliver had obtained was of no value at the time that it was obtained by Coker, and of no value at the time of the trial. The plaintiffs in error, having also moved for a new trial upon the ground of newly discovered evidence, contend that the court erred in not sustaining that ground of the motion. We shall consider these several grounds in their order.

1. The witness B. H. Hill was permitted to testify as follows: "I asked Coker if he had employed Oliver, and Coker said, 'Yes, he took the case on the same terms that you declined,' which was a contingent fee of ten per cent." The same witness was permitted to testify also, "He (Coker) stated to me that Mr. Oliver accepted

the case for collection on the terms I declined,—ten per cent. of whatever was collected,—on contingent fee." We find no error in the admission of this testimony. The evidence does not show that Mr. Hill, at the time of the conversation, was Mr. Coker's attorney in any sense, or that he at that time intended to employ him as an attorney, or that the conversation was had with Mr. Hill as an attorney, in contemplation of his employment. It is plain, from the testimony, that the information that Mr. Hill obtained was voluntarily given by Mr. Coker in a casual, friendly conversation. It can not be taken in any sense as a privileged communication, or as one which should be excluded upon the well-settled ground of sound public policy.

2. The court did not err in excluding the testimony sought to be elicited from the witness F. M. Coker Jr. The real value of the stock which Mr. Coker took in exchange for the judgment Oliver had obtained in his behalf was irrelevant to the present issue. Oliver was not consulted, and had not consented to the exchange. Mr. Coker had the right to deal with the debt due him by Reed as he saw proper, provided his action did not defeat Oliver's right to collect and retain ten per cent. of the principal and interest of the judgment for his services as an attorney at law. Unless some act or omission on the part of his attorney, in connection with the transfer, contributed to his loss, the attorney's right would not in any wise be affected by the fact that the client preferred to take property instead of money, in settlement of the fi. fa. the attorney had procured. Having placed the claim in the attorney's hands for collection, Mr. Coker could not defeat this right of the attorney; and if he saw proper to make a settlement with his debtor for less than the face value of the claim, without the attorney's consent, the attorney would still be entitled to claim and to hold his client liable for ten per cent. of the face value of the judgment. If it would be relevant to show that Coker had made a bad trade in disposing of the judgment in which the attorney had an interest to the extent of ten per cent. of the amount collected, for his services rendered, and that by reason of that fact the amount the attorney should receive must be diminished, it would be equally relevant to show that in another instance the client, being a good trader, had gotten more for the judgment than it was really worth, and, therefore, that the attorney

was entitled to ten per cent. on a greater sum than the face of the judgment. Of course Coker could have shown that he had never collected anything, and in that event no liability whatever would have attached to him, under the evidence that the fee was dependent upon collection. But a client who has placed a claim in the hands of an attorney for collection, and who makes a settlement of any kind of such claim with his debtor, without consulting his attorney and obtaining his consent to the settlement, will be presumed to have collected the claim in full, or to have received such a settlement as was as satisfactory to him as payment in full. It was, therefore, immaterial what was the value of the stock which Mr. Coker took in exchange for his judgment. He did not consult his attorney, Mr. Oliver. It is further to be presumed (as it is not to be inferred that he would expect to diminish Mr. Oliver's compensation without his knowledge or consent) that Coker at that time considered the stock an equivalent for the full value of his judgment. Of course, if Coker had made no settlement and Oliver had collected nothing, Oliver would have been entitled to no fee, contingent or otherwise; but just as it was not in the power of Oliver, without Coker's consent, to make a settlement with Reed by which Coker would receive less than his ninety per cent. of the face value of his judgment, so it was not within the power of Coker, after having entrusted his claim to Oliver, and after Oliver, in pursuance of the contract, had obtained the judgment, to settle the claim in such a way that Oliver would receive less than his ten per cent. without his consent. Where the relation of attorney and client exists and the sole compensation of the attorney is to be a certain percentage of the claim or demand he is employed to collect, his right to that proportion of the entire demand or claim is as absolute as his client's right to the amount from which that per cent. is to be deducted. Of course, it is within the power of the client, upon the failure of the attorney to perform services, or for negligence to perform, to withdraw from the contract, which has already been broken by the attorney by non-performance of his duties; but even in that event the attorney should be notified that he has been discharged.

3. The newly discovered evidence comes within the rule of impeaching testimony, and, therefore, afforded no ground for new trial. While it is insisted that it was not sought to impeach, still

this is the only effect of the testimony.    Mr. Hill testified that he was not the attorney of Mr. Coker at the time of the conversation related by him. It was sought to show by the letter that he was at that time Mr. Coker's attorney.    Furthermore, as the letter was all along in the possession of the defendant, we think that the court very properly held that this testimony could not be classified as such newly discovered evidence as requires the grant of a new trial.

4.    We think that the evidence fully authorized the finding of the trial judge, to whom the case was submitted without the intervention of a jury.    That Mr. Coker employed Mr. Oliver as an attorney, to collect the Reed notes, under some kind of contract, is shown by the fact that Oliver, in the State of Alabama, had the notes and obtained judgment upon them for Coker.    Coker having died, Oliver's mouth was closed, and he was prevented from testifying as to the nature of the contract or any communication which had passed between Coker and himself.    The evidence of Mr. Hill was to the effect that at one time Mr. Coker had tried to get him to collect the notes upon a contingent fee of ten per cent. of the amount collected, but that he declined to make such a contract. Mr. Hill testified, however, that subsequently to his declining to take the notes, in the course of a casual conversation with Mr. Coker, the latter told him that he had employed Mr. Oliver to collect the notes upon the same terms that he, Hill, had declined.    It appears that Reed had no property standing in his own name, and that for that reason no immediate effort was made by Oliver to collect the judgment by levy, though the matter was the subject of continued correspondence between Coker and Oliver.    At length, as appears from the correspondence, Oliver was about to have certain property levied upon as the property of Reed, the defendant in fi. fa.    Perhaps, due to this fact, Coker was able to effect a settlement with Reed.    At any rate, without the knowledge or consent of Oliver, Mr. Coker effected a settlement with Reed, by which he obtained $15,000 in stock of a pecan-grove corporation, in return for $5,000 in cash and the cancellation of his judgment obtained against Reed. Presumably, Mr. Coker was of the opinion at that time that the stock in the corporation he was purchasing was of some value, for he invested $5,000 in cash in the enterprise.    If the stock was of any value approaching par, he received full value for the judg-

ment; because, in addition to the stock which he received for cash, he obtained $10,000 of additional stock in return for a judgment amounting to but little over $6,000. But whether it was a good trade or a bad trade, it was *his* settlement of the claim which had been placed in the hands of the attorney for collection,—upon which the attorney, so far as the evidence discloses, had been as reasonably diligent as the circumstances would warrant,—and a settlement with reference to which the attorney was not consulted. The client could not be permitted, without clearer proof that the attorney had failed to discharge his duty, either to break or alter the contract previously made.

*Judgment affirmed. Hill, C. J., disqualified.*